Hear ye, hear ye, this Honorable Appellate Court for the 2nd Judicial District is now back in session. The Honorable Christopher Edward Kennedy presiding. Good morning everyone, please be seated. Good morning, the 2nd Judicial Indoctrination Court is now in session. The Honorable 314, the Country Mutual Insurance Company plaintiff Appellate v. Tanya Kreulach and William Whitrod, defendants and plaintiffs. Arguing on behalf of the Counsel, Mr. Jackson, Mr. Jeremy, and Mr. Macklin. Arguing on behalf of the Appellate Committee, Mr. Michael and William. All right, Counsel, Mr. Macklin, you may begin when ready. Please feel free to adjust the microphone. May it please the Court. Good morning, Your Honors. My name is Jeremy Macklin and I represent the Plaintiff Appellate Country Mutual Insurance Company. We're here today on a single issue case which is the interpretation of the who is an insured provision of the Country Mutual Policies. That provision provides, I'll be back up, the Country Mutual Policies were issued to Wicks Pizza as the named insured. So Wicks Pizza purchased this coverage, the coverage from Country Mutual, to cover its liabilities in connection with claims made against it. So Wicks Pizza is an insured under the policies definition of you, which is one of the paragraphs of the who is an insured provision. The provision we're here to talk about today is paragraph C of that provision, which affords insured status to anyone liable for Wicks Pizza's conduct, but only to the extent of that liability. This is not novel policy language. This is standard policy language that is included in business commercial auto policies. It is issued and prepared by the Insurance Services Organization, the ISO, as can be seen at the bottom of the page of the coverage form that says Insurance Services Organization, which is an advisory organization that publishes standardized forms like this. And so this is not a form that's unique to the Country Mutual Policies. These are forms that are included in other commercial auto policies, such as other major carriers, even minor carriers who purchase these forms from the ISO. And so because of its frequent use, it has been subject to litigation in Illinois, in federal court, and across jurisdictions. And some of those cases are cited in our appellant's brief. And all of those cases have held that this provision, the liability for someone liable for the conduct of Wicks Pizza to the extent of that liability, is a vicarious liability provision. So someone who is alleged to be vicariously liable for Wicks Pizza's conduct becomes an insured to the extent of that vicarious liability. The underlying lawsuit today involved a lawsuit by Ms. Tanya Krulock against Mr. William Whiprod. Mr. William Whiprod was driving his own vehicle, delivering pizzas, and was involved in an accident. Mr. Whiprod was the sole defendant in the underlying lawsuit. And the only allegations against Mr. Whiprod in the underlying lawsuit were for his own negligence in the operation of his vehicle. Under the plain language interpretation of the policy, Mr. Whiprod was not alleged to be liable for Wicks Pizza's conduct. Or, additionally, there's a judgment that resulted from that lawsuit. And that judgment did not hold Mr. Whiprod liable for Wicks Pizza's conduct. So under a plain language interpretation of the country policies, Mr. Whiprod is not an insured under the country mutual policies. The underlying lawsuit, there was an amended complaint filed after this lawsuit was filed that purported to allege that Wicks Pizza was Mr. Whiprod's employer. But that amended complaint did not change the allegations of negligence against Mr. Whiprod, which is that he was negligent and liable to the plaintiff for his own negligent operation of the vehicle. Now, the Appellee has cited to a First District decision, MOLDA, which I assume that the panel may have questions on. But that case, it's country mutual's position, it's distinguishable in the first instance. And in the second instance, it was wrongly decided. Well, how is it distinguishable? It's distinguishable in the sense that that case dealt with a bench trial on the insurance company's duty to defend the driver in that case. That was a bench trial over whether that carrier owed a duty to defend. So this case is distinguishable because there is no dispute that the country mutual policies are excess policies that do not owe a duty to defend. And in that case, I think the trial court may have, did say that the policy was an excess policy, but from my review of the appellate decision in MOLDA, and I also scoured the trial court record, I could not find any reference to or argument made that the first Chicago policy in the MOLDA decision was an excess policy. And so in that case, the court was determining the duty to defend, which does not exist here. It's country mutual's position that as an excess carrier, it did not and never owed a duty to defend anybody in the underlying lawsuit. This is a duty to indemnify case, which looks to Mr. Whitbraw's actual liability, not his potential liability. And his actual liability to Ms. Krulock was for his own negligence in his operation of the vehicle. So that is why the MOLDA decision is distinguishable, duty to defend case versus duty to indemnify case. And those are very different standards. In Illinois, there's a whole, there's a very good body of case on, that's cited in our proofs, that sets forth the standards for duty to defend analysis and a duty to indemnify analysis. And the trial court felt that it was bound by MOLDA and that there was potential liability. I think the trial court said WICS is passively liable for the negligently torturous acts of WICS. Why is that incorrect and why do you think the court should not have followed MOLDA? So, excuse me, MOLDA was a case where the... I mean, it's actually MOLDA's on all fours pretty much. I mean, with the exception, as you mentioned, about it not being excess, but otherwise the facts are pretty much what we have here. The other exception that sets it apart factually, Your Honor, is the fact that the employer in that case was initially named in the lawsuit, but got out on a motion to dismiss. Which was after the statute. Correct. Which, I mean, could have been done here, would have been a nullity anyway. But the MOLDA court did acknowledge that the potential for responding at superior liability was there because they were named in the lawsuit. That was part of that paragraph 52, paragraph 50 reasoning that the MOLDA court thought was relevant to include the reference to that fact that the employer was initially a party to that lawsuit. The finding that this passive negligence, which it's phrased more in terms of the liability, the potential liability or the theoretical liability for quasi-contractual indemnity, which would be if MOLDA is found, excuse me, if MOLDA is found liable and was found liable in that case, that he has a, excuse me, if the employer was found liable in that case, they would have a quasi-contractual liability claim against MOLDA, which is different than it's liability to the employer versus liability for the conduct of an employer. And the policy doesn't speak of liability to the employer. It's liability for the conduct of the employer, which is why I also think that MOLDA was incorrect in the way that it extrapolated that hypothetical or theoretical liability, which ignores the second part of that definition of 1C, which is you're only insured to the extent of that liability, to the extent you're liable for the conduct of another. And so the trial court did recognize, yes, I'm bound by MOLDA, but I also recognize that the plain language of the policy supports, may support country mutual's position, as well as some of those other decisions, including a northern district decision that supports country mutual's position that this is a vicarious liability policy. What about the MOLDA court's reasoning that liability is determined at the time of the occurrence? Okay, so those, that phrase comes from a line of cases that deal with relationships, and that relationships are determined at the time of the occurrence. And so the first case that the MOLDA court cites, too, is the Guardina versus State Farm case. And that court held that the determination of whether Guardina was wife's spouse under the policy should be made by referring to the circumstances at the time of the incident. And so if we're going to extrapolate that reasoning here, Mr. Whitblatt's status as an employee is determined at the time of the occurrence, but the duty to defend and the parameters and scope of a duty to defend or a duty to indemnify are not determined at the time of the occurrence. And that's because the duty to ensure his obligations, the defense and indemnity obligations, aren't determined or don't incept until a lawsuit is filed. And so you can't determine the scope of liability, the extent of liability, the theories of liability, until that lawsuit is filed. The other case cited by MOLDA for that proposition is Hawkeye. Hawkeye Security Insurance Company versus Sanchez. And in that case, the court said the question of whether Debbie Salinas was a resident of the named insurance household is determined as the date of the occurrence. Again, that's a relationship. Whether someone was a resident of a house or not, whether someone was married or not, whether someone was the other case, the Coley case, which Gaudina cites to Coley versus State Farm Mutual, the contract defined the relative as someone who lived with the named insurance. Was that person a relative at the time of the occurrence? And so that phrase of the questions of applicable coverage can be determined at the time of the accident is not the duty to defend or the liability is fixed at the time of the accident. It's what are those relationships? So, for example, if I believe Mr. Whitbrod has since left his employment with Rick's Pizza, well, that wouldn't change in a future lawsuit alleging vicarious liability that that question of whether he was an employee, that's determined at the time of the accident. He was, in fact, working for Rick's Pizza at the time of the incident. But that doesn't change his liability or the extent of his liability, which is determined by the pleading asserted against him and by the liability determined by a court or by a jury. I apologize. The railroad has yet to honor our request that they not blast their horns during oral argument. I did have a question. The automobile is covered as a non-owned automobile? The automobile would satisfy the definition, the symbol nine definition of non-owned auto. And so Rick's Pizza, had it been sued for the use of that auto, would be insured for the covered auto. But that does not, there are two different inquiries here. Is there a covered auto in the first instance? And then who is insured for the use of that covered auto? And so Rick's Pizza purchased the coverage for itself that I, Rick's Pizza, am covered, or I have liability coverage for the use of this auto. That does not mean that anybody and everybody is insured for the use of that auto. In fact, Mr. Whitbrod had his own insurance through State Farm that covered his liability in connection with the use of that auto. That was the primary insurance, which is another reason why this is not a duty to defend cases, to show that there was primary insurance affording coverage for it. And the country mutual primary policy, or its phrase is a primary policy, is rendered excess for non-owned autos. That's in the other insurance provision of that policy. And so that provision expressly says we are an excess policy when the covered auto is a non-owned auto. And then number two, the country mutual umbrella policy says we are excess above any and all other insurance. And so they are both, by the plain language, by the plain language of those other insurance clauses, excess policies above and over the State Farm policy. The Council has raised some ambiguity arguments regarding this endorsement called the non-owned auto food delivery endorsement. I would like to point out, number one, that there's no language that the opposing Council has said is ambiguous. But number two, nothing in that endorsement changes the definition of who is an insured, as explained in the trial court. This is merely, the language in the endorsement says the annual premium for non-owned auto food delivery is charging an additional premium for the fact that non-owned autos are used in WIC's pizza business. It doesn't change who is an insured provision. It doesn't change the fact that simple non-covered autos are covered autos for purposes of WIC's pizza's coverage under the policy. One question. Is it disputed that country mutual received notice of the was it an arbitration that was conducted with the plaintiff and his employer? Country mutual received an indication through a letter from Council that an arbitration would likely be happening, that an assignment of rights would be happening from Mr. Whitbrod to Ms. Krulock. But country mutual has never provided the details about that arbitration, when it would be taking place, where it would be taking place, country mutual only learned about that it had taken place and the results of it after the fact. Were they invited to participate? No, Your Honor. Are there any questions? No. All right, thank you, Counsel. You will have time for rebuttal. Thank you, Your Honors. And Mr. Bigley-Owen, when you are ready, please also feel free to adjust the microphone if you need to, and proceed when ready. Thank you, Judge. May it please the Court, my name is Michael Bigley-Owen and I represent the appellee, Ms. Tanya Krulock. As Counsel just stated, this case comes to the Court from a declaratory action commenced by country mutual seeking one determination, that William Whitbrod was not an insured under a commercial or umbrella insurance policy. The trial court disagreed and granted summary judgment to my client about his insured status. We will prove that that decision was appropriate for three reasons. First, because this case is indeed on all fours with the first Chicago Insurance Company versus Molda decision. Second, because country mutual's invitation to this Court to disavow Molda is aired and should be declined. And third, because the policy interpretation that country is espousing in disavowing Molda is simply not reasonable. As an initial preliminary procedural matter, Your Honor, excuse me, after losing summary judgment, country mutual was permitted to file a post-summary judgment loss amended pleading where it fully contradicted itself and pled two counts that William Whitbrod was indeed its insured. It did that to allege that he breached the voluntary payment clauses of the applicable policies while participating in what it has coined, regretfully, a sham arbitration. It is our position that in taking that position, in making those two counts, country mutual has pled itself out of this Court. Pleading affirmatively that Whitbrod is its insured establishes an impenetrable defense to the claim that he is not. And also to succeed on those counts, country mutual would need to contradict count one, which is being litigated here. Beyond that, it's simply inequitable and violates multiple insurance law equitable doctrines to simultaneously claim that a party is insured for purposes avoiding coverage but is not for the very same purpose. To get to point one, the Molda case is directly on point with this case. In Molda, an employee driver was in a car crash with the plaintiff. The plaintiff sued the employee but did not timely sue the employer within the statute of limitations. The insurance policy at issue was identical. It covered non-owned autos with the same provision at issue here. The who is an insured section is identical to the provisions at issue in the commercial and umbrella-based policies. The insurer filed a deck action maintaining the exact same defense at issue here, namely that failure to timely sue the employer foreclosed all coverage. And the Molda court, in succinct reasoning, determined that questions of applicable coverage are determined as of the date of the injury-causing event, and secondly, that by virtue of the doctrine of quasi-contractual implied indemnity, that the employee was insured under 1C of the insuring agreement. It is our position that this is directly on point and that this court's analysis, respectfully, should mirror that of the Molda court. Counsel, I don't have a problem with the idea or concept that the facts are what they are and they will determine success on the merits, but that presumes, like an enthemy does, that you sue the parties that you claim are at fault, all of them, and you allege causes of action against each and every one of them. Did you do that in this case? No, Your Honor. We admittedly did not, and the reason for that is that the case came to us immediately before the statutory period ended, and there was no indication in the evidence that I had that the at-fault driver was in the course and scope of employment at the time. That's why that transpired, and I respect the question, of course, Your Honor, but the point remains that that is factually identical and that the employer was judgment-proof and suit-proof because of expiration of the statutory period. What Country Mutual seems to be asking this court... Did Molda address what I just asked you? It did. And what was his claim to fame, so to speak? The claim to fame was at paragraphs 50 and 51 in the opinion, I believe, and what the court said to the date of the incident giving rise to liability. And as of that date, the employee was potentially liable to the employer in quasi-contractual implied indemnity. But doesn't that contradict Illinois law and the duty to defend, which is looking at the four corners of the complaint and comparing that to the policy? Respectfully, no, Judge, and here's why. The Molda court's analysis was premised upon is this driver an insured? If he is an insured, then in Molda, the plaintiff sued an insured. And per the Molda policy and per the policies at issue here, if you sue an insured, then under the four corners of the complaint test and the policy language, that's what triggers the duty to defend. The Molda policy, I presume, was the same in terms of who is an insured and that insured status depending on being liable for, in this case, the pizza company. So how is the driver liable for the conduct of the pizza company? So to that, we go to the American National Bank Illinois Supreme Court 1992 decision. Obviously, we all know that the pizza company has vicarious liability for the negligent conduct of its driver committed in the course and scope of his employment relationship. Well, under the doctrine of quasi-contractual implied indemnity, if vicarious liability is imposed on the pizza delivery company and the tort plaintiff collects from them, they do indeed have a right to seek indemnity from their employer. That just doesn't arise typically because most pizza drivers don't have the money to make that indemnification. But it exists legally and that's what the Supreme Court and American National Bank laid down and that is the holding upon which Molda is premised and it remains good law today. As does the district line of unbroken precedent going all the way back to 1985 saying that questions of applicable coverage are determined as of the date of the injury, not as of the date that a lawsuit is filed or a deck action is filed. And that's what the policy. This isn't a claims-made policy. This is an occurrence-based policy. As of the date of the occurrence, coverage existed under 1C of the insuring agreements. And what... Counsel, have you ever heard the legal maxim pleadings without proof is as defective as proof without pleadings? I haven't heard that, Judge, but I'll take your word for it. I've cited it in several of my opinions over the years because what ends up happening is normally in most trials it's normal to move to amend the pleadings to conform to the proof. Of course. Proofs. And you do that so that the defendant or the party who lost the judgments or lost on the merits doesn't come back and claim that there was a defect in the pleadings such that essentially under the old common law Ritz where for instance a demur meant that if you failed a state of cause of action the plaintiff didn't just have the complaint stricken and was allowed to plead over. The case was dismissed with prejudice. You were allowed one pleading so to speak and if you didn't do it right you were out. And so they tried to come up with other means of softening that problem. And one of them was to allow at the end of the proofs to allow the party who had the burden of proof to move to conform the pleadings to the proofs. And the case that you cite and the Supreme Court case that you cite I don't know that they necessarily are in conflict with the legal maxim that yes what you say is true. And in the vernacular liability is based upon the date of the incident or the action and that's partly because insurance is a contract and you have to determine whether or not the event occurred within the coverage or the effective dates of the contract. So that's almost at least insofar as the elementary aspect of coverage and whether it's inside or outside the period or the  annual or otherwise periodic coverage. Your citation to the premises is there any more specificity in that Supreme Court decision that would indicate that it's not talking in general terms regarding whether or not the incident occurred within or without the contract parameters? The Supreme Court case and the other case cited in Moldo which is the Top Gun First District case have to do with settlement agreements whereby release of the agent inures to the  who's solely alleged to be vicariously liable. That's the context of those cases Judge. But they do discuss the fact that the agent slash employee bears liability under quasi contractual implied indemnity. That's the context. Now what I would ask the court to consider respectfully of course is as of the date that this contract was entered, these insuring agreements, Moldo had been the law in the state of Illinois for a full five years. Country Mutual is charged with knowledge in contracting in light of that. And as best I can tell they've litigated an entire case in the trial court and come to this court saying we knew about that decision. We chose not to change our policy in light of the fact that that decision said there's coverage in this instance. We charged a premium for that coverage but we don't like it and now we want you to invalidate Moldo or break from Moldo and retroactively invalidate coverage. And we feel that that's simply inequitable. And I know my time is running short so I'll ask the court to just consider if it does indeed choose to break from Moldo what the interpretation of this policy would become. Country is asking the court to do a  auto that provided coverage to his employer a corporation that can only act through its employees but did not cover simultaneously the driver that it was acting through. Adding to that confusion it's undisputed that under this policy anyone driving a covered auto isn't insured for U.M. U.I.M. purposes. Excuse me. So when Whitbroad hit my client he simultaneously insured for U.M. U.I.M. but uninsured if he hit someone else. The net effect of that is that you would have someone driving an automobile that's both covered and uncovered with the driver being both insured and uninsured. And that's what they're saying.   policy holder entering into this contract would have understood it to mean. And it's our position that that is simply aired. And the only contrary precedent that is being offered is federal district court decisions that are not have the precedential weight that the molded decision has. So it's our position that the trial court's  should indeed be affirmed. And to answer one of the panel's questions, we definitively did give country mutual notice that we would like to                           that coverage of the policy as well. That is also unsupported and based on an incorrect interpretation of section 143.13a of the Illinois insurance code, which requires that liability policies also provide UMUIM coverage for the same limits. Though that section only applies to insurance policies issued to natural persons, not to companies like Country Mutual Insurance Company. It applies to your personal auto, the state foreign policies that are issued to some personal drivers. And there's the Worley v. Fender case that's cited in our brief for that proposition. Number three, in response to the committee's question about whether, how Mr. Wiprod was liable for the conduct of WIC's pizza, the explanation of quasi-contractual indemnity did not answer that question. That question was, the way the council answered that question was Mr. Wiprod could have been liable to his employer for quasi- contractual indemnity. That did not answer the question of how was Mr. Wiprod liable for the conduct of WIC's pizza, which is what the policy requires, which is another reason why Mulder was incorrect in making that leap in logic that because Mr. Wiprod was potentially, theoretically liable for quasi-contractual indemnity claim to his employer, that he's somehow now liable for his employer's conduct. That's simply a leap in logic that's not supported by the law or the facts. Fourthly, there was a point about  the statements from Mulder about determining coverage as of the date of the accident, that question of whether he isn't insured, whether someone isn't insured is not determined on the date of the accident. And as your honors pointed out, there's a duty to defend analysis that the court looks at to determine whether based on the allegations, that person isn't insured or not. The question of coverage determined at the time of the accident is, was he employed or not? And lawsuits filed two or three years later look back to say, yes, his relationship to Wicks Pizza is determined as of the date of the accident, but whether he qualifies as insured based on the claims asserted against him is not something that could be  as of the date of the  There are a litany of causes of action that could have been asserted against him, against Mr. Rick Broad, and that would not have made him insured under any sort of policy. And so the statement that his insured status is determined as of the date of the accident is simply not supported by the well-ingrained ill-informed duty to defend analysis. The last point I'll make is relative to the fact as we explained in our reply brief, it's well understood that alternative pleading is allowed, and those two counts that were asserted as counts two and three of the Second Amendment complaint said to the extent that Rick Broad isn't insured, Kennedy's alternative arguments arise, and   asked that initial count up for appeal right away and to allow the case to move forward, which is why we then asserted those two other counts, which alternative pleading is permissible and in no way was an admission that he isn't insured under the Second   So              will deliberate on the matter, issue a ruling in due course, and we will recess until our next case is